IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
(Greenbelt Division)

| | |
|---|---|
| **Shaddy Abdelaal**<br>2517 K St, NW<br>Washington, DC 20037<br>*Plaintiff,*<br><br>v.<br><br>**WSP Global Inc.**<br>d/b/a WSP USA<br>One Penn Plaza, 4th Floor<br>250 W. 34th Street<br>New York, New York 10119<br><br><br>**Urban Engineers, Inc.**<br>530 Walnut Street<br>Philadelphia, PA 19106<br>*Defendants* | Case Number: |

# COMPLAINT

# THE PARTIES

1. Plaintiff, Shaddy Abdelaal is an individual and resident of the District of Columbia.

2. Mr. Abdelaal is a Black/African American Male in his mid-30s.

3. Defendants are large multifunctional corporations engaged in the business of engineering, building, constructing, contracting and subcontracting.

4. Upon information and belief, Defendants WSP Global Inc. (D/B/A WSP USA)("WSP") is a publicly traded company that has over 1,000 employees with revenues of approximately $11.9 Billion.

1

5. Upon information and belief, WSP is headquartered and maintains its principal place of business in New York.

6. Defendant Urban Engineers ("UE") is a nationwide firm employing over 1,000 employees. Urban Engineers has revenues in the millions of dollars and contracts with States and the Federal government.

7. Upon information and belief, UE is headquartered and maintains its principal place of business in Philadelphia, PA.

8. Defendants conduct substantial and systematic business in the State of Maryland, the District of Columbia and Virginia.

9. Defendants own and operate offices and conduct business operations in the District of Columbia, Virginia and the State of Maryland.

10. The majority of the business communications with the Plaintiff and other third parties in connection with the issues and claims in this case occurred in the District of Columbia.

## JURISDICTION AND VENUE

11. Plaintiff hereby incorporates all preceding paragraphs as if fully restated herein.

12. The United States District Court for the District of Columbia has jurisdiction over this matter.

13. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §1331. Plaintiff's complaints alleged federal causes of action under 42 U.S.C. §1981, National Transit Systems Security Act (NTSSA), 6 U.S.C. §1142 and Federal Railroad Safety Act (FRSA) 49 U.S.C. §20109. The District Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

14. The corporate actions that form the basis for Plaintiff's claims substantially occurred in the District of Columbia.

15. Upon information and belief, a majority of the witnesses, documents and evidence is located in District of Columbia.

16. The United States District Court for the District of Columbia has personal jurisdiction over the parties.

## FACTS

17. Plaintiff hereby incorporates all preceding paragraphs as if fully restated herein.

18. Plaintiff was hired as a Senior Electrical Inspector by Defendant Urban Engineers in 2022.

19. Plaintiff's work assignment locations were 2251 26th Street, NE Washington, DC 20018 and the Shepherd Parkway WMATA site.

20. At all times relevant to this complaint, Plaintiff was an employee of Defendants.

21. Defendants were contractors working on a Washington Metropolitan Transit Authority (WMATA) renovation project.

22. The WMATA renovation project was a project connected to WMATA's operation as a railroad carrier and public transportation agency eligible to receive federal funds.

23. Defendants Urban Engineers and WSP were Plaintiff's joint employer.

24. Urban Engineers and WSP made the decision to hire Plaintiff on the project.

25. Urban Engineers and WSP had control over Plaintiff's day to day tasks and duties.

26. Urban Engineers and WSP controlled Plaintiff's location, work assignments and hours.

27. Urban Engineers and WSP had the authority to hire, fire and assign the terms and conditions of Plaintiff's employment.

28. Urban Engineers and WSP could direct the control of Plaintiff's day to day activities.

29. WSP was the first-tier owner on the WMATA contract and Urban Engineers was the second tier owner. Both WSP and Urban Engineers shared a reporting structure on the WMATA renovation projects that required Plaintiff to report to WSP and Urban Engineers.

30. Plaintiff regularly reported to both Urban Engineers and WSP employees.

31. WSP directed personnel actions taken by Urban Engineers with respect to Plaintiff's employment, including his suspension and termination.

32. Soon after Plaintiff began working at the WMATA renovation project site in the summer of 2022, Plaintiff made complaints that Defendants were not providing adequate facilities to African American workers. In particular, Defendants were refusing water, ice and shelter to African American workers in the midst of a D.C. summer heatwave.

33. While on the job site, another WMATA contractor sharing reporting with WSP informed Plaintiff that workers were not permitted to obtain ice or step into shelters to cool down.

34. Plaintiff raised complaints to Defendants that Defendants were not providing workers with water or facilities required for safe and hazard free working conditions.

35. On or about June 9, 2022, Plaintiff raised complaints to Defendants that Defendants were operating the WMATA site without a safety officer, which constitutes a violation of the WMATA contract and a violation of law, rule or regulation and a

hazardous, unsafe working condition related to the WMATA renovation projects. Plaintiff raised his complaints in an email to WSP and Urban Engineers personnel.

36. On or about June 10, 2022, Plaintiff complained that Defendants were directing employees to work in a 30-foot hole without an evacuation/safety ladder and that Defendants were pouring stones into the hole while employees were failing to follow safety rules and regulations. Plaintiff reported these violations to Urban Engineers, WSP and WMATA in June, 2022.

37. In June, 2022, Plaintiff observed on the WMATA renovation site that African American employees were not provided equal work materials, not allowed to use shelter to get out of the heat, not permitted to get water or ice to cool down, not allowed to use trailers predominantly reserved for White employees and were otherwise treated as second class labor in comparison to White contractors on the worksite.

38. On or about June 14, 2022, Plaintiff had a discussion with Urban Engineers supervisor Giles Njumbe concerning Plaintiff's allegations of discriminatory treatment at the WMATA renovation site related to African American employees and contractors. Plaintiff had the good-faith reasonable belief that he was engaging in protected activity by complaining about unlawful discrimination in employment.

39. On June 16, 2022, a WSP supervisor directed Plaintiff to meet with him. At this meeting, Plaintiff, again, notified WSP that he had been complaining about discriminatory employment practices at the WMATA renovation site and complained that WSP and Urban Engineers were fostering unsafe and hazardous working conditions. During this meeting, the WSP supervisor began making false accusations

concerning Plaintiff being "rude."  Plaintiff followed up this meeting by making additional complaints to Mr. Njumbe (Urban Engineers) about the safety and hazardous working conditions issue as well as the discriminatory treatment towards African American employees at the WMATA renovation sites.

40. On multiple occasions, Plaintiff complained that Defendants operated the construction site without a safety officer.  Plaintiff reported these instances to Urban Engineers, WSP and WMATA through emails and in-person/phone calls.

41. In or about June 2022, while working at the Sherperd Parkway renovation site, Plaintiff complained that employees were not wearing and/or had no available PPE and were forced to work in trailers with mold and asbestos.

42. On June 17, 2022, after arriving at the Shepherd Park renovation site, Plaintiff observed that the equipment was demobilized without notifying the inspection team and that no contractors were working.

43. The same day, Plaintiff went to the Bladensburg WMATA renovation site and discovered that, yet again, work was being done on the project without a safety officer.

44. On June 18, 2022, Plaintiff observed that contractors were performing contract work without proper safety equipment.

45. Plaintiff also observed that contractors were installing fencing around a fire hydrant, which constituted a hazardous and dangerous working condition.

46. Plaintiff also observed that a contractor had falsified the Activity Hazard Report (AHA).  The AHA falsely attested that there were no safety issues raised and that

contractors were adorning the proper safety equipment. This report was provided to WMATA with falsified information.

47. In between June 18, 2022 and June 22, 2022, Plaintiff made multiple complaints to WMATA, WSP and Urban Engineers about the falsified safety report, dangerous and hazardous working conditions and the discriminatory treatment of African American contractors.

48. On June 22, 2022, Plaintiff sent additional emails to Urban Engineers and WSP concerning his allegations of failing to have a safety officer on site.

49. On June 22, 2022, a WSP inspector held a meeting with Plaintiff.

50. In that meeting, the Inspector confirmed that WSP, Urban Engineers and WMATA were aware of Plaintiff's discrimination, safety and falsification complaints.

51. During the meeting, the Inspector confirmed that WSP had spoken to WMATA and Urban Engineers concerning Plaintiff's complaints.

52. On June 22, 2022 Plaintiff was suspended from his position.

53. WSP and Urban Engineers made the joint decision to suspend Plaintiff from employment.

54. On June 23, 2022, Plaintiff contacted WMATA and complained that he was being retaliated against for raising issues concerning safety, hazardous working conditions and discrimination at the WMATA renovation sites.

55. Between June, 2022 and August, 2022, Plaintiff continued to make complaints that he believed he was being retaliated against for raising issues concerning safety, hazardous working conditions and discrimination at the WMATA renovation sites.

56. On August 5, 2022 Plaintiff was notified that he was terminated from his position. Plaintiff was told by Meredith Clark, Vice President of Human Resources, Urban Engineers that WSP had made the decision to terminate and remove Plaintiff from the WMATA renovation sites.

57. Plaintiff has administratively exhausted all remedies prior to filing these claims.

58. Plaintiff timely filed complaints with the Secretary, OSHA and DOL.

59. Plaintiff timely filed complaints with the EEOC and DCOHR.

**COUNT I – Retaliation in violation of 42 USC §1981.**

60. Plaintiff hereby adopts and incorporates all aforementioned paragraphs as if herein stated.

61. Plaintiff engaged in protected activity under 42 U.S.C. §1981.

62. Plaintiff held the good faith, reasonable belief that he was opposing unlawful employment activity (race discrimination) under Section 1981.

63. Defendants were aware that Plaintiff was opposing what he reasonably believed was unlawful employment activity.

64. Defendants retaliated against Plaintiff because of his opposition activity in violation of 42 USC §1981.

65. Defendants violated 42 USC §1981.

66. Plaintiff suffered adverse employment actions (including suspension and termination) as the result of Defendant's retaliation.

67. There is a causal connection between Plaintiff's protected activity and the adverse actions suffered by Plaintiff.

68. Defendants were motivated by Plaintiff's protected activity in causing Plaintiff to suffer adverse employment actions.

69. Defendants retaliated against Plaintiff because of Plaintiff's protected activity.

70. Defendants acted willfully and maliciously.

71. Defendants did not make good-faith efforts to comply with any anti-retaliation policy.

72. Defendants are subject to punitive damages and capable of paying a punitive damages award.

73. On Count I, Plaintiff demands judgment in the form of backpay, frontpay, attorneys fees, costs, compensatory damages, punitive damages, equitable and injunctive relief and damages in amount exceeding $75,000 to be determined by a Jury.

**COUNT II – Retaliation in Violation of the D.C. Human Rights Act D.C. Code § 2-1401.01 *et seq.***

74. Plaintiff hereby adopts and incorporates all aforementioned paragraphs as if herein stated.

75. Plaintiff engaged in protected activity under D.C. Human Rights Act, D.C. Code § 2-1401.01 *et seq.* Plaintiff held the reasonable belief that he was opposing unlawful employment activity (race discrimination and retaliation) under the aforementioned statutes.

76. Defendants were aware that Plaintiff was opposing what he reasonably believed was unlawful employment activity.

77. Defendants retaliated against Plaintiff because of his opposition activity in violation of D.C. Human Rights Act, D.C. Code § 2-1401.01 *et seq.*.

78. Defendants violated D.C. Human Rights Act, D.C. Code § 2-1401.01 *et seq.*

9

79. Plaintiff suffered adverse employment actions (including termination) as the result of Defendant's retaliation.

80. There is a causal connection between Plaintiff's protected activity and the adverse actions suffered by Plaintiff.

81. Defendants were motivated by Plaintiff's protected activity in causing Plaintiff to suffer adverse employment actions.

82. Defendants retaliated against Plaintiff because of Plaintiff's protected activity.

83. Defendants acted willfully and maliciously.

84. Defendants did not make good-faith efforts to comply with any anti-retaliation policy.

85. Plaintiff administratively exhausted his remedies prior to filing suit.

86. Defendants are subject to punitive damages and capable of paying a punitive damages award.

87. On Count II, Plaintiff demands judgment in the form of backpay, frontpay, attorneys fees, costs, compensatory damages, punitive damages, equitable and injunctive relief and damages in amount of exceeding $75,000 to be determined by a Jury

### COUNT III - Discrimination in Violation of the D.C. Human Rights Act D.C. Code § 2-1401.01 *et seq.*

88. Plaintiff hereby adopts and incorporates all aforementioned paragraphs as if herein stated.

89. Defendants discriminated against Plaintiff on the basis of his race (Black/African American) in violation of the D.C. Human Rights Act D.C. Code § 2-1401.01 *et seq.*

90. Plaintiff is African American.

91. Plaintiff is a member of a protected class.

92. At all times relevant to this complaint, Plaintiff was successfully performing the functions of his position at a level that satisfied the employers' legitimate expectations. issues. Plaintiff was continuing to provide the same satisfactory service to the employer that he had prior to his termination.

93. Defendants were motivated by Plaintiff's race in making the decision to alter the terms and conditions of Plaintiff's employment, suspend and/or terminate Plaintiff.

94. Defendants suspended, terminated and/or altered the terms and conditions of Plaintiff's employment because of Plaintiff's race.

95. Plaintiff suffered adverse employment actions because of his race.

96. Defendants' actions were willful and/or malicious.

97. Defendants failed to take good-faith steps to comply with any anti-discrimination policies.

98. Plaintiff's colleagues expressed discriminatory animus towards African American/Black employees.

99. Plaintiff has administratively exhausted all prerequisites to filing suit.

100. Upon information and belief, Plaintiff was replaced with someone outside of Plaintiff's protected class.

101. Plaintiff administratively exhausted his remedies prior to filing suit.

102. On Count III, Plaintiff demands judgment in the form of backpay, frontpay, attorneys fees, costs, compensatory damages, punitive damages, equitable and injunctive relief and damages in amount exceeding $75,000 to be determined by a Jury.

## COUNT IV - Discrimination in Violation of 42 U.S.C. §1981

103. Plaintiff hereby adopts and incorporates all aforementioned paragraphs as if herein stated.

104. Defendants discriminated against Plaintiff on the basis of his race (Black/African American) in violation of the 42 U.S.C. §1981.

105. Plaintiff is African American.

106. Plaintiff is a member of a protected class.

107. At all times relevant to this complaint, Plaintiff was successfully performing the functions of his position at a level that satisfied the employers' legitimate expectations. Plaintiff had never been counseled or disciplined for any performance issues. Plaintiff was continuing to provide the same satisfactory service to the employer that he had prior to her termination.

108. Defendants were motivated by Plaintiff's race in making the decision to alter the terms and conditions of Plaintiff's employment suspend and/or terminate Plaintiff.

109. Plaintiff suffered adverse employment actions because of his race.

110. Defendants' actions were willful and/or malicious.

111. Defendants failed to take good-faith steps to comply with any anti-discrimination policies.

112. Plaintiff's colleagues expressed discriminatory animus towards African American/Black employees.

113. Plaintiff has administratively exhausted all prerequisites to filing suit.

114. Upon information and belief, Plaintiff was replaced with someone outside of Plaintiff's protected class.

115. On Count IV, Plaintiff demands judgment in the form of backpay, frontpay, attorneys fees, costs, compensatory damages, punitive damages, equitable and injunctive relief and damages in amount of $1,000,000 (or exceeding that amount) to be determined by a Jury.

**COUNT V – Retaliation in violation of the National Transit Systems Security Act (NTSSA), 6 U.S.C. §1142**

116. Plaintiff hereby adopts and incorporates all aforementioned paragraphs as if herein stated.

117. Plaintiff engaged in protected activity under the NTSSA.

118. Defendants are contractors or subcontracts or a public transportation agency.

119. The Washington Metropolitan Area Transit Authority (WMATA) is a publicly owned operator of public transportation eligible to receive federal assistance under Chapter 53 of Title 49.

120. Plaintiff held the reasonable belief that he was engaging in protected activity under the NTSSA.

121. Plaintiff held the good faith belief that he was engaging in protected activity under the NTSSA.

122. Plaintiff was suspended, terminated and otherwise discriminated against, in whole or in part, due to Plaintiff's protected activity or because Plaintiff was perceived to be engaging in protected activity.

123. Defendants were aware or perceived that Plaintiff was engaging in protected activity under the NTSSA.

124. Defendants retaliated against Plaintiff in whole or in part because of engaging in protected activity, or perceived Plaintiff to be engaging in protected activity under the NTSSA.

125. Plaintiff suffered adverse employment actions (including termination) as the result of Defendant's retaliation.

126. There is a causal connection between Plaintiff's protected activity under the NTSSA and the adverse actions suffered by Plaintiff.

127. Defendants were motivated by Plaintiff's protected activity in causing Plaintiff to suffer adverse employment actions.

128. Defendants retaliated against Plaintiff because of Plaintiff's protected activity.

129. Defendants acted willfully and maliciously.

130. Defendants did not make good-faith efforts to comply with any anti-retaliation policy.

131. Defendants are subject to punitive damages and capable of paying a punitive damages award.

132. On Count V, Plaintiff demands judgment in the form of backpay, frontpay, attorneys fees, costs, compensatory damages, punitive damages, equitable and injunctive relief and damages in amount exceeding $75,000 (or exceeding that amount) to be determined by a Jury.

133. Plaintiff has administratively exhausted all claims. More than 210 days have passed since Plaintiff filed a complaint with the Department of Labor, Occupational Safety and Health Administration. The Secretary of Labor has not issued a final decision and the delay is not due to the bad faith of Plaintiff.

**COUNT VI – Retaliation in violation of the Federal Railroad Safety Act (FRSA) 49 U.S.C. §20109.**

134. Plaintiff hereby adopts and incorporates all aforementioned paragraphs as if herein stated.

135. Plaintiff engaged in protected activity under the FRSA.

136. Defendants are contractors or subcontracts or a railroad carrier.

137. The Washington Metropolitan Area Transit Authority (WMATA) is a railroad carrier.

138. Plaintiff held the reasonable belief that he was engaging in protected activity under the FRSA.

139. Plaintiff held the good faith belief that he was engaging in protected activity under the FRSA.

140. Plaintiff was suspended, terminated and otherwise discriminated against, in whole or in part, due to Plaintiff's protected activity or because Plaintiff was perceived to be engaging in protected activity.

141. Defendants were aware or perceived that Plaintiff was engaging in protected activity under the FRSA.

142. Defendants retaliated against Plaintiff in whole or in part because of engaging in protected activity, or perceived Plaintiff to be engaging in protected activity under the FRSA.

143. Plaintiff suffered adverse employment actions (including termination) as the result of Defendant's retaliation.

144. There is a causal connection between Plaintiff's protected activity under the FRSA and the adverse actions suffered by Plaintiff.

15

145. Defendants were motivated by Plaintiff's protected activity in causing Plaintiff to suffer adverse employment actions.

146. Defendants retaliated against Plaintiff because of Plaintiff's protected activity.

147. Defendants acted willfully and maliciously.

148. Defendants did not make good-faith efforts to comply with any anti-retaliation policy.

149. Defendants are subject to punitive damages and capable of paying a punitive damages award.

150. On Count IV, Plaintiff demands judgment in the form of backpay, frontpay, attorneys fees, costs, compensatory damages, punitive damages, equitable and injunctive relief and damages in amount exceeding $75,000 (or exceeding that amount) to be determined by a Jury.

151. Plaintiff has administratively exhausted all claims.  More than 210 days have passed since Plaintiff filed a complaint with the Department of Labor, Occupational Safety and Health Administration.  The Secretary of Labor has not issued a final decision and the delay is not due to the bad faith of Plaintiff.

**WHEREFORE,** Plaintiffs demand judgment against Defendants for the following relief:

a) As described above, form of backpay, frontpay, attorneys fees, costs, compensatory damages, punitive damages, pre and post judgment interest, equitable and injunctive relief and damages in amount of in excess of $75,000 (or exceeding that amount for each Count) to be determined by a Jury.

b) Such other relief as the court deems proper and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts.

Respectfully submitted,

*Daniel E. Kenney*
_____
Daniel E. Kenney, Esq.
Bar No. MD0025
DK Associates, LLC
5425 Wisconsin Avenue, Suite 600
Chevy Chase, MD 20815
202-430-5966 Phone
dan@dkemployment.com