UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHADDY ABDELAAL,

   *Plaintiff*,

 v.

URBAN ENGINEERS, INC., *et al.*,

   *Defendants*.

Civil Action No. 23-1793 (LLA)

## MEMORANDUM OPINION AND ORDER

Plaintiff Shaddy Abdelaal brings this action against his former employers, Defendants WSP USA, Inc. ("WSP") and Urban Engineers, Inc. ("Urban Engineers") alleging retaliation in violation of 42 U.S.C. § 1981; the D.C. Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 *et seq.*; the National Transit Systems Security Act ("NTSSA"), 6 U.S.C. § 1142; the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109; and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Pending before the court are WSP's partial motion to dismiss and Urban Engineers' partial motion to dismiss. ECF Nos. 15, 17. For the reasons explained below, the court will grant in part and deny in part WSP's partial motion to dismiss, and grant Urban Engineers' partial motion to dismiss.

### I.  Factual Background

In resolving Defendants' motions to dismiss, the court accepts the following factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Shaddy Abdelaal is "a Black/African American [m]ale in his mid-30s." ECF No. 13 ¶ 2. WSP and Urban Engineers were contractors working on Washington Metropolitan Transit Authority ("WMATA") renovation projects: WSP was the first-tier owner on the WMATA contract, and Urban Engineers was the

second-tier owner. *Id.* ¶¶ 22, 31. In 2022, Urban Engineers hired Mr. Abdelaal as a Senior Electrical Inspector and assigned him to work at two locations: 2251 26th Street, NE and the Shepherd Parkway WMATA site. *Id.* ¶¶ 19-20.

Throughout June 2022, Mr. Abdelaal made various complaints to WSP and Urban Engineers alleging racial discrimination and safety violations on-site. *Id.* ¶¶ 46-48, 50-52, 56-59. Mr. Abdelaal alleged that Defendants "refus[ed] water, ice and shelter to African American workers in the midst of a D.C. summer heatwave." *Id.* ¶ 34. Specifically, Shaun Pratt, a white WSP project manager, allowed Brian O'Hare, a white Urban Engineers employee, access to water, ice, a trailer in which to cool off, and parking at the job site, but did not allow Mr. Abdelaal and other Black Urban Engineers employees such amenities. *Id.* ¶¶ 30, 37-38. Mr. Abdelaal was also told by a white supervisor that he and another Black Urban Engineers employee needed to "ask permission for ice," while their white colleague was not required to ask for permission. *Id.* ¶ 39. When Mr. Pratt and Mr. O'Hare learned that Black Urban Engineers employees were attempting to "us[e] the facilities to cool down and/or grab water and ice, WSP and Urban Engineers approved a key code lock on the door to prevent the African American employees from using the space." *Id.* ¶ 41.

Over the course of June 2022, Mr. Abdelaal lodged numerous complaints with Defendants about unsafe and hazardous working conditions on-site, including that:

- Defendants repeatedly operated the WMATA site without a safety officer, *id.* ¶¶ 45, 49, 52, 57;
- Defendants "direct[ed] employees to work in a 30-foot hole without an evacuation/safety ladder and . . . Defendants were pouring stones into the hole while employees were failing to follow safety rules and regulations," *id.* ¶ 46;
- "employees were not wearing and/or had no available PPE and were forced to work in trailers with mold and asbestos" and "contractors were performing contract work without proper safety equipment," *id.* ¶¶ 50, 53;

- equipment was at one point "demobilized without notifying the inspection team," *id.* ¶ 51;
- contractors installed fencing around a fire hydrant, *id.* ¶ 54; and
- a contractor falsified the Activity Hazard Report, "falsely attest[ing] that there were no safety issues raised and that contractors were adorning the proper safety equipment," *id.* ¶ 55.

On June 23, 2022, Mr. Abdelaal was suspended from his employment and barred from the worksite. *Id.* ¶¶ 65-66. He was also "notified that he was not to report to work and that Toney Maceo"—a white WSP employee—"had terminated [him]."[1] *Id.* ¶ 76. Mr. Abdelaal alleges that he was later told he had been suspended because "Urban Engineers was investigating his discrimination and NTSSA and FRSA claims." *Id.* ¶ 69. He claims that the true reason for his suspension, however, was "to prevent [him] from making any additional complaints." *Id.* ¶ 70. From June 23, 2022 to August 2022, Mr. Abdelaal continued to make complaints to Urban Engineers and WSP, stating that he believed he was being retaliated against for raising discrimination and safety issues. *Id.* ¶ 78.

On August 5, 2022, Mr. Abdelaal was terminated from his position. *Id.* ¶ 80. Urban Engineers employee Meredith Clark informed Mr. Abdelaal that "WSP had made the decision to terminate and remove [him] from the WMATA renovation sites." *Id.* Although Mr. Abdelaal was qualified for multiple positions that were open at the time of his termination, "Urban Engineers falsely told [him] that there were no open and available jobs for which [he] was qualified." *Id.* ¶¶ 82-83.

---

[1] The complaint also states: "Mr. Maceo was aware that Plaintiff had brought forth discrimination complaints . . . and suspended him as a result of those claims." ECF No. 13 ¶ 77. It is therefore unclear whether Mr. Maceo suspended Mr. Abdelaal, terminated Mr. Abdelaal, or first suspended and then terminated Mr. Abdelaal.

On September 2, 2022, Mr. Abdelaal filed a complaint with the U.S. Department of Labor Occupational Safety and Health Administration ("OSHA"), pursuant to 29 U.S.C. § 660(c).  ECF No. 20-1, at 4; ECF No. 20-2.  The parties, and the court, refer to this complaint as a "Section 11(c) whistleblower complaint," or "Section 11(c) complaint."  *See, e.g.*, ECF No. 17-1, at 1, ECF No. 20-1, at 6.  In his Section 11(c) complaint, Mr. Abdelaal alleged that he was placed on paid administrative leave and ultimately terminated because he had complained about various safety issues on site, including a lack of water and shelter, the absence of a safety officer, "improper trenching, no ladder access, and employee on his cell phone while 57 stone was being poured into the trench," and "mold, asbestos, and lack of proper PPE."  ECF No. 20-2, at 9-10.  Mr. Abdelaal alleges—but Defendants dispute—that he later amended his Section 11(c) complaint "to include claims under the [NTSSA] . . . and the [FRSA]."  ECF No. 20-1, at 4; ECF No. 16, at 11-12; ECF No. 17-1, at 3-4.

## II.     Procedural History

Mr. Abdelaal filed this action in June 2023, alleging both discrimination and retaliation in violation of various federal and local statutes.  ECF No. 1.  Specifically, he claims that WSP and Urban Engineers discriminated against him on the basis of race in violation of the DCHRA (Count III), 42 U.S.C. § 1981 (Count IV), and Title VII (Count VIII), and retaliated against him in violation of Section 1981 (Count I), the DCHRA (Count II), NTSSA (Count V), FRSA (Count VI), and Title VII (Count VII).  ECF No. 13 ¶¶ 93-219.

WSP and Urban Engineers each filed a partial motion to dismiss.  ECF Nos. 15, 16, 17.  Both Defendants ask the court to dismiss Mr. Abdelaal's NTSSA and FRSA claims because they are barred by the statutes' election-of-remedies provisions and, in the alternative, because Mr. Abdelaal has failed to state a claim.  ECF No. 16, at 11-15; ECF No. 17, at 1-2.  WSP also

moves to dismiss all of Mr. Abdelaal's remaining claims except Count II (retaliation under the DCHRA) for failure to state a claim.  ECF No. 16, at 2 n.1.

### III. Legal Standards

The plaintiff bears the burden of establishing subject-matter jurisdiction.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-61 (1992).  In reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), the court will "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In evaluating a motion to dismiss under Rule 12(b)(6), the court will accept the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Id.*

### IV. Discussion

WSP and Urban Engineers each move to dismiss Mr. Abdelaal's FRSA and NTSSA claims (Counts V and VI)—WSP pursuant to Rule 12(b)(6) and Urban Engineers pursuant to both Rules 12(b)(1) and 12(b)(6)—arguing that those claims are precluded by the statutes' elections-of-remedies provisions.  It is unclear whether NTSSA and FRSA's election-of-remedies provisions present questions of subject-matter jurisdiction or merely provide an affirmative defense.  *See McCrae v. H.N.S. Mgmt. Co.*, No. 22-CV-217, 2022 WL 16635390, at *3

5

(D. Conn. Nov. 2, 2022) ("The parties agree that the NTSSA election of remedies provision provides an affirmative defense, not a question of subject matter jurisdiction."). Under either standard, the court concludes that Mr. Abdelaal's NTSSA and FRSA claims must be dismissed. *See Mercer v. Schriro*, 337 F. Supp. 3d 109, 135 n.16 (D. Conn. 2018) (granting motion to dismiss without deciding whether Rule 12(b)(1) or 12(b)(6) is the proper standard).

WSP also moves to dismiss Mr. Abdelaal's Title VII and Section 1981 claims (Counts I, III-IV, and VII-VIII) pursuant to Rule 12(b)(6). WSP urges the court to dismiss Mr. Abdelaal's Title VII claim because he has not adequately pleaded that WSP was his "employer" within the meaning of Title VII, and his Section 1981 claim because he has not adequately pleaded that he and WSP had a contract. ECF No. 16, at 5-9. WSP also argues that "all of [Mr. Abdelaal]'s race discrimination claims [(Counts III, IV, and VIII)] . . . should be dismissed" because he has not alleged sufficient facts to give rise to an inference of race discrimination. *Id.* at 9. Mr. Abdelaal opposes dismissal of his Title VII and Section 1981 retaliation claims, but he does not oppose dismissal of his substantive race discrimination claims. ECF No. 20-1, at 19. The court concludes that Mr. Abdelaal has stated retaliation claims under both Title VII and Section 1981, and it will dismiss Mr. Abdelaal's race discrimination claims.

### A. Race Discrimination Claims

As noted, Mr. Abdelaal does not oppose WSP's motion to dismiss his race discrimination claims. ECF No. 20-1, at 19 (explaining that Mr. Abdelaal "is withdrawing his substantive race discrimination claims and will not oppose Defendants' motion to dismiss on that basis"). The court will therefore dismiss Counts III, IV, and VIII.

### B. FRSA and NTSSA Claims

FRSA and NTSSA make it unlawful for railroad carriers (in the case of FRSA), public transportation agencies (in the case of NTSSA), and their contractors and subcontractors to

retaliate against employees who raise safety concerns. *See generally* 49 U.S.C. § 20109 (FRSA); 6 U.S.C. § 1142 (NTSSA). Both statutes include identical election-of-remedies provisions which provide that "[a]n employee may not seek protection under both this section and another provision of law for the same allegedly unlawful act." 49 U.S.C. § 20109(f) (FRSA); 6 U.S.C. § 1142(e) (NTSSA). WSP and Urban Engineers move to dismiss Mr. Abdelaal's NTSSA and FRSA retaliation claims, arguing that Mr. Abdelaal has already sought protection for the same retaliatory conduct at issue here by filing a whistleblower retaliation complaint under Section 11(c) of the Occupational Safety & Health ("OSH") Act, 29 U.S.C. § 660(c)—and therefore his claims are barred by FRSA and NTSSA's election-of-remedies provisions. ECF No. 16, at 11-12; ECF No. 17-1, at 8-10. Section 660(c) prohibits employers from retaliating against employees for raising safety concerns or otherwise exercising their rights under the OSH Act. 29 U.S.C. § 660(c). Mr. Abdelaal admits that he filed a Section 11(c) complaint with OSHA, but argues that, in doing so, he did not "seek protection under . . . another provision of law" sufficient to create an election of remedies problem. *See* ECF No. 20-1, at 6-7.

As a threshold matter, the court takes judicial notice of the administrative complaint Mr. Abdelaal filed with OSHA on September 2, 2022, and OSHA's letter dated September 27, 2022, acknowledging receipt of that complaint. ECF No. 17-4; ECF No. 20-2. At the motion-to-dismiss stage, courts may take judicial notice of public records, as well as documents that "are referred to in the complaint and are integral to [the plaintiff's] . . . claim." *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004). Mr. Abdelaal's September 2022 administrative complaint is both a public record and a document integral to his federal complaint. Further, district courts routinely take judicial notice of administrative complaints—particularly where, as here, no party disputes the administrative complaint's authenticity. *See, e.g.*, *Crawford v. Duke*, 867 F.3d

103, 108 (D.C. Cir. 2017); *Vasser v. McDonald*, 228 F. Supp. 3d 1, 9-10 (D.D.C. 2016); *see also* ECF No. 20-1, at 6 (explaining that it is undisputed for purposes of Defendants' motions to dismiss that Mr. Abdelaal filed a Section 11(c) complaint).

In his September 2022 administrative complaint, Mr. Abdelaal alleged that his employers had terminated him because he had made safety complaints and, in doing so, they "violated Section 11(c) of the Occupational Safety & Health Act."[2] ECF No. 17-4, at 4. OSHA acknowledged receipt of that complaint, describing it as a "whistleblower retaliation complaint filed under Section 11(c) of the Occupational Safety & Health Act, 29 U.S.C. § 660(c)." ECF No. 20-2, at 1. Mr. Abdelaal himself admits that he "filed a complaint with OSHA pursuant to 29 U.S.C. § 660(c)." ECF No. 20-1, at 4. The issue for the court, then, is whether, by filing a complaint explicitly invoking the protections of the OSH Act, Mr. Abdelaal has "s[ought] protection under . . . another provision of law" within the meaning of FRSA and NTSSA. 49 U.S.C. § 20109(f); 6 U.S.C. § 1142(e). The court concludes that he has.

[2] The court notes that the parties attach two different versions of the Section 11(c) complaint as exhibits. Mr. Abdelaal and WSP attach an OSHA document labeled "Whistleblower Case Activity Worksheet." ECF No. 17-4; ECF No. 20-2, at 9-10. This appears to be a summary of Mr. Abdelaal's complaint, created by the agency and signed by an agency investigator. *Id.* The Worksheet does not state what statute, if any, governs Mr. Abdelaal's claim. *Id.* Given the Worksheet alone, it would be difficult to say whether Mr. Abdelaal in fact sought relief under Section 11(c)—or any other specific provision of law—in filing his complaint. However, Urban Engineers attaches both the Worksheet and a document labeled "Processed Online Complaint Summary," which appears to capture the information Mr. Abdelaal submitted to OSHA when he filed his complaint. ECF No. 17-1, at 3-5. In the Processed Online Complaint Summary, Mr. Abdelaal states: "Complainant's employers; Urban Engineers and WSP violated Section 11(c) of the Occupational Health & Safety Act (11(c)) (1970) 29 U.S.C. [§] 660(c) when it took adverse action(s), including termination, against Complainant." ECF No. 17-4, at 4. Because Mr. Abdelaal does not challenge the authenticity of this document and in fact concedes that he filed an OSHA complaint pursuant to Section 11(c), *see* ECF No. 20-1, at 4, the court takes judicial notice of both the Worksheet and the Processed Online Complaint Summary and considers both to be part of Mr. Abdelaal's Section 11(c) complaint.

"In addressing a question of statutory interpretation, we begin with the text." *Eagle Pharms., Inc. v. Azar*, 952 F.3d 323, 330 (D.C. Cir. 2020) (quoting *City of Clarksville v. FERC*, 888 F.3d 477, 482 (D.C. Cir. 2018)).  Because "[t]he NTSSA is modeled on the FRSA," *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 635 n.7 (4th Cir. 2015), and the statutory language at issue is identical, *see* 49 U.S.C. § 20109(f) (FRSA); 6 U.S.C. § 1142(e) (NTSSA), the court addresses the statutes together.

As the Sixth Circuit explained in interpreting FRSA's election-of-remedies clause, "[t]o seek 'protection[]' . . . ordinarily means to seek 'shelter, defen[s]e, or preservation from harm.'" *Norfolk S. Ry. Co. v. Perez*, 778 F.3d 507, 512-13 (6th Cir. 2015) (quoting *Oxford English Dictionary* 678 (2d ed. 1989)).  Therefore, "an employee 'seeks protection' under a statute only if he seeks to use it as a shelter—that is, only if the statute is the source of the substantive remedy for the harm that the employee is attempting to avert." *Id.* at 513; *see Reed v. Norfolk S. Ry. Co.*, 740 F.3d 420, 425 (7th Cir. 2014) (explaining, in interpreting FRSA, that "[t]o seek protection under another provision of law must mean . . . to bring a claim founded on a comparable substantive protection.").  The OSH Act provides such a substantive remedy: it vests courts with the authority to order "all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay." 29 U.S.C. § 660(c)(2); *see Reed*, 740 F.3d at 425 ("[W]e agree that if [the plaintiff] brought a claim under the Occupational Safety and Health Act, which extends whistleblower protection to employees that file a workplace safety complaint or take other protected action, the election-of-remedies provision would bar a successive FRSA claim.").  In fact, FRSA's legislative history suggests that Congress included the election-of-remedies provision to "clarify[] the relationship between the remedy provided [by FRSA] and a possible separate remedy under OSHA." *Perez*, 778 F.3d at 510 (quoting 126 Cong. Rec. 26532

9

(Sept. 22, 1980) (statement of Rep. Florio)).  As one member of Congress explained at the time, certain railway workers might qualify for both FRSA remedies and OSHA remedies, and Congress "inten[ded] that pursuit of one remedy should bar the other, so as to avoid resort to two separate remedies, which would only result in unneeded litigation and inconsistent results."  *Id.*; *see Lee*, 802 F.3d at 634 ("Congress . . . intended to bar railroad employees from seeking duplicative relief under overlapping anti-retaliation or whistleblower statutes that provide protections similar to the protections in FRSA, such as Section 11(c) of the OSH Act."); *see also* Occupational Safety & Health Admin., Investigator's Desk Aid to the National Transit Systems Security Act (NTSSA) Whistleblower Protection Provision at 13-15 (rev. Aug. 26, 2020) (explaining that "[e]lection of remedies issues may arise if . . . the protected activity alleged in the complaint implicates both NTSSA and Section 11(c) of the OSH Act")[3]; Occupational Safety & Health Admin., Investigator's Desk Aid to the Federal Railroad Safety Act (FRSA) Whistleblower Protection Provision at 14-15 (rev. Dec. 20, 2019) (same, in the context of FRSA).[4]

      Mr. Abdelaal argues that filing a Section 11(c) complaint pursuant to Section 660(c) does not constitute an "election of remedies" until the Secretary of Labor takes enforcement action.  ECF No. 20-1, at 8.  To seek relief under the OSH Act, an employee must first "file a complaint with the Secretary [of Labor] alleging . . . discrimination [or retaliation]."  29 U.S.C. § 660(c)(2).  The Secretary has discretion to investigate the complaint "as he deems appropriate," and "bring an action in any appropriate United States district court" to prosecute OSH Act violations.  *Id.*  "Thus, it is the Secretary of the Department of Labor, not an individual employee, whom the statute authorizes to initiate a civil action in a federal district court against an employer who allegedly

---

[3] Available at https://perma.cc/9QEG-HWU4.

[4] Available at https://perma.cc/EQ5Z-Q2RD.

violated the OSHA Act." *Johnson v. Interstate Mgmt. Co., LLC*, 871 F. Supp. 2d 1, 5 (D.D.C. 2012), *aff'd*, No. 14-7164, 2015 WL 4072092 (D.C. Cir. June 29, 2015).  Here, the parties agree that Mr. Abdelaal's Section 11(c) complaint remains under investigation, and that the Secretary has made no findings and taken no enforcement action.  ECF No. 17-1, at 10; ECF No. 20-1, at 6.  Mr. Abdelaal asks the court to find that "the 'protections' contemplated by the election of remedies provisions in the NTSSA and FRSA occur after the Secretary issues an 11(c) determination . . . and files an action in district court to obtain judicial relief."  ECF No. 20-1, at 8.

But Mr. Abdelaal's interpretation would read the verb "seek" out of FRSA and NTSSA. Congress did not prohibit employees from "obtaining" protection under multiple provisions of law, but from "seek[ing]" such duplicate protection.  An employee still "seeks" OSH Act protections and remedies—reinstatement, back pay, and so on—by filing a Section 11(c) complaint, even if the Secretary decides not to prosecute that complaint, and even if the employee never receives those remedies.  FRSA and NTSSA provide simply that employees may not "seek protection under . . . another provision of law"—and it just so happens that the provision of law at issue here, the OSH Act, requires complainants to seek protection via a particular administrative process.  The fact that Mr. Abdelaal's complaint is stalled at the first step of that administrative process—OSHA's investigation—does not change the fact that he "s[ought] protection under" the OSH Act when he filed his complaint on September 2, 2022.

Mr. Abdelaal also argues that FRSA and NTSSA contain "anti-dilution" clauses that trump their election-of-remedies clauses.  ECF No. 20-1, at 11.  Each statute provides that "[n]othing in this section shall be deemed to diminish the rights, privileges, or remedies of any employee under any Federal or State law or under any collective bargaining agreement."  49 U.S.C. § 20109(h); 6 U.S.C. § 1142(g) (using "construed" instead of "deemed"); *see* ECF No. 20-1, at 11.  Courts of

appeals have identified this tension and differ in how they resolve it.  In *Perez*, the U.S. Court of Appeals for the Sixth Circuit considered whether Section 20109(f) precludes an employee from filing a FRSA claim if the employee has already claimed that the same adverse employment decision violated his collective bargaining agreement and has arbitrated that dispute as required by the Railway Labor Act ("RLA"), 45 U.S.C. § 153.  *See* 778 F.3d at 508.  The court held that such an employee faces no election-of-remedies problem because it is the employee's collective bargaining agreement—a contract, not a "provision of law"—that guarantees the remedies the employee seeks.  *Id.* at 512-13.  In dicta, the court noted the apparent contradiction between FRSA's anti-dilution and election-of-remedies clauses, explaining that "Subsection (h) precludes applying § 20109(f) [FRSA's election-of-remedies provision] to 'diminish' an employee's rights under 'any' law or 'any' collective bargaining agreement. . . . But it seems quite clear that § 20109(f) dilutes an employee's rights whenever it is enforced."  *Id.* at 514.  To resolve that tension the court looked to FRSA's legislative history, determining "that Congress's intent in adding subsection (h) in 2007 was to expand employees' protections, and in doing so, it likely overrode subsection (f)'s purpose of barring 'resort to two separate remedies.'"  *Id.* (quoting 126 Cong. Rec. 26532 (Sept. 22, 1980) (statement of Rep. Florio)).  Thus, the Sixth Circuit had "little trouble concluding that, where subsection (f) conflicts with subsection (h), the latter controls instead of the former."  *Id.*; *see Lee*, 802 F.3d at 634 (U.S. Court of Appeals for the Fourth Circuit noting that "Congress's addition of subsection (h) in 2007 further supports a narrow interpretation of the Election of Remedies provision.").

The U.S. Court of Appeals for the Seventh Circuit took up the same question in *Reed* and reached the same conclusion: an employee can pursue remedies for the same underlying retaliation via a FRSA claim and by arbitrating based on a collective bargaining agreement.  740 F.3d

at 424-25. However, the Seventh Circuit took a less categorical approach to FRSA's anti-dilution clause than the Sixth Circuit, reading the anti-dilution and election-of-remedies clauses together such that "[t]he election-of-remedies provision only bars railroad employees from seeking duplicative relief under overlapping antiretaliation or whistleblower statutes; it does not diminish their rights or remedies under collective bargaining agreements in any way." *Id.* at 426.[5]

This court finds the Seventh Circuit's reading of FRSA's anti-dilution clause more persuasive. Courts "are guided by the rule that the maximum possible effect should be afforded to all statutory provisions, and, whenever possible, none of those provisions rendered null or void." *Citizens to Save Spencer Cnty. v. U.S. Env't Prot. Agency*, 600 F.2d 844, 870 (D.C. Cir. 1979). "[T]his principle applies with equal strength when statutory provisions are in certain respects inconsistent." *Id.* at 871; *see Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (quoting 2A N. Singer, *Statutes and Statutory Construction* § 46.06, 181-86 (rev. 6th ed. 2000))). The Sixth Circuit—and Mr. Abdelaal—would seem to read the anti-dilution clause to swallow the election-of-remedies clause, while the Seventh Circuit's approach gives effect to both provisions. Had Congress intended the anti-dilution clauses to entirely override the election-of-remedies clauses, it could have removed the election-of-remedies provisions. It did not. *See Am. Forest Res. Council v. United States*, 77 F.4th 787, 799 (D.C. Cir. 2023), *cert. denied*, 144 S. Ct. 1110 (2024) ("[I]n reviewing an alleged statutory conflict, we must bear in mind the 'strong presumption that repeals by implication are disfavored and that Congress will specifically address preexisting law when it wishes to suspend its normal operations

---

[5] Again, however, this language is best read as dicta. *See Reed*, 740 F.3d at 426 ("To be clear, these additional sources confirm our interpretation but do not control it. We find that the plain meaning of 49 U.S.C. § 20109(f) is enough.").

in a later statute.'" (quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018) (internal quotation marks omitted))). The court therefore declines to read the election-of-remedies provisions out of NTSSA and FRSA.

The court's conclusion that Mr. Abdelaal's FRSA and NTSSA claims are precluded by the statutes' election-of-remedies provisions obviates the need to address several other of the parties' arguments. First, the parties dispute whether Mr. Abdelaal successfully amended his September 2022 administrative complaint to add FRSA and NTSA claims. *See* ECF No. 16, at 11-12; ECF No. 17-1, at 3-4; ECF No. 20-1, at 4. Because the court has determined that Mr. Abdelaal sought protection under the OSH Act by filing his administrative complaint on September 2, 2022, it is immaterial—for election-of-remedies purposes—whether he later amended that claim to seek protection under additional statutes. Next, Mr. Abdelaal asks the court "to decide whether Plaintiff's withdrawal of his 11(c) claim with OSHA (before any determination, notice or district court action by the Secretary) would eliminate the 'election of remedies' barrier." ECF No. 20-1, at 11. But Mr. Abdelaal has only alleged that he amended his Section 11(c) claim; he does not contend that he withdrew it. *Id.* at 6 ("It is undisputed for the purposes of Defendant's Rule 12(b)(1) motion that Plaintiff filed an 11(c) complaint *as well as* a FRSA/NTSSA complaint with OSHA in 2022." (emphasis added)). To answer this question would be to issue an advisory opinion in excess of the court's jurisdiction. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423-24 (2021). Finally, because the court has concluded that Mr. Abdelaal's FRSA and NTSSA claims are barred by the statutes' election-of-remedies provisions, the court need not determine whether Mr. Abdelaal has stated a claim under those statutes. *See* ECF No. 16, at 12-15; ECF No. 17-1, at 10-14.

### C. Title VII

Mr. Abdelaal contends that Urban Engineers and WSP were his joint employers such that both entities can be held liable for retaliation under Title VII. ECF No. 13 ¶ 24. WSP moves to dismiss, arguing that Mr. Abdelaal has not alleged sufficient facts to demonstrate that WSP was his "employer." ECF No. 16, at 5-7. The court disagrees.

"To invoke Title VII's protections" against WSP, Mr. Abdelaal must "establish, among other things, that he was an 'employee[]'" of WSP. *Al-Saffy v. Vilsack*, 827 F.3d 85, 96 (D.C. Cir. 2016) (quoting 42 U.S.C. § 2000e-16(a)). "[A]n individual may be jointly employed by two or more entities." *Id.* The U.S. Court of Appeals for the D.C. Circuit has recognized "two largely overlapping articulations of the test for identifying joint-employer status": the *Spirides* test and the *Browning-Ferris* test. *Id.* at 96-97 (citing *Spirides v. Reinhardt*, 613 F.2d 826 (D.C. Cir. 1979); *NLRB v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117 (3d Cir. 1982)). The *Spirides* test focuses on the "economic realities" of the alleged employer-employee relationship, considering whether the "employer has the right to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved." *Id.* at 96 (quoting *Spirides*, 613 F.2d at 831-32). Under the *Browning-Ferris* test, the court asks whether the employer "while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." *Id.* at 97 (quoting *Browning-Ferris*, 691 F.2d at 1123). Under both tests, "the touchstone is control." *Id.*

Here, Mr. Abdelaal has sufficiently alleged that WSP controlled and directed "the means and manner" of his work. *Spirides*, 613 F.2d at 831. His complaint states generally that Urban Engineers and WSP were his joint employers, that the companies shared hiring and firing

15

authority, and that both companies could direct his day-to-day work activities. ECF No. 13 ¶¶ 24-29. But, as Rule 12(b)(6) requires, the complaint backs up those generalizations with the following specific factual allegations:

- WSP Project Manager Mr. Pratt had authority over two Urban Engineers employees—Giles Njumbe and Brian O'Hare—"to direct personnel actions, fire, assign terms and conditions and otherwise direct aspects of Plaintiff's employment as equal with Urban Engineers," ECF No. 13 ¶ 30;
- "Plaintiff regularly reported to both Urban Engineers and WSP employees," *id.* ¶ 32;
- Mr. Pratt "was, in part or in whole, responsible for the decision to provide Brian O'Hare (White) (Urban Engineers) access to the [w]ater, the [i]ce and the trailer while denying Plaintiff (Black), Victor (Black) (Urban Engineers) and Mohammed (Black) (Urban Engineers) access to cool off in the trailer, take ice from the cooler, have access to the water or shelter from the heat," *id.* ¶ 37;
- "WSP and Urban Engineers approved a key code lock on the door" of the trailer "to prevent . . . African American employees from using the space" to cool down and obtain water and ice, *id.* ¶ 41;
- A WSP supervisor met with Mr. Abdelaal on June 16, 2022 to discuss his repeated complaints, *id.* ¶ 48;
- Mr. Abdelaal lodged multiple complaints with WSP reporting safety violations at construction sites, *id.* ¶¶ 45-46, 49, 52, 54, 56;
- "WSP and Urban Engineers made the joint decision to suspend Plaintiff from employment" *id.* ¶ 67; and
- "On June 23, 2022, Plaintiff was notified that he was not to report to work and that Toney Maceo," a white WSP employee, "had terminated Plaintiff," *id.* ¶ 76.

Mr. Abdelaal has thus alleged that WSP exercised control over the details of his day-to-day work—from hiring and firing, to fielding his concerns about safety and discrimination on-site, to deciding which employees received access to water and ice. At this early stage of the litigation, Mr. Abdelaal has done enough to suggest that WSP is a joint employer within the meaning of Title VII. *See Clayton v. District of Columbia*, 117 F. Supp. 3d 68, 84 n.5 (D.D.C. 2015) ("[W]hether a defendant qualifies as a joint employer under these tests is a fact-intensive inquiry that can rarely be resolved at the pleadings stage.").

### D.      Section 1981

Mr. Abdelaal claims that WSP retaliated against him in violation of 42 U.S.C. § 1981. WSP moves to dismiss this claim, arguing that Mr. Abdelaal has not alleged a contractual relationship with WSP that gives rise to a Section 1981 claim.

Section 1981 protects the right of all persons to "make and enforce contracts" without respect to race. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474-75 (2006) (quoting 42 U.S.C. § 1981(a)). "Any claim brought under § 1981, therefore, must initially identify an impaired 'contractual relationship.'" *Id.* at 476 (quoting 42 U.S.C. § 1981(b)). Courts in this Circuit have recognized at-will employment as "a species of contract" that can give rise to a Section 1981 claim. *Covington v. FMC & Assocs., LLC*, No. 22-CV-1441, 2023 WL 5133184, at *7 (D.D.C. Aug. 10, 2023) (quoting *Sheppard v. Dickstein, Shapiro, Morin & Oshinsky*, 59 F. Supp. 2d 27, 32 (D.D.C. 1999)); *see Uzoukwu v. Metro. Wash. Council of Gov'ts*, 983 F. Supp. 2d 67, 89 (D.D.C. 2013); *Brown v. Children's Nat'l Med. Ctr.*, 773 F. Supp. 2d 125, 135 (D.D.C. 2011). Mr. Abdelaal has alleged that, although he was hired by Urban Engineers, WSP and Urban Engineers "were his joint employer[s]." ECF No. 13 ¶¶ 19, 24. Accepting this factual allegation as true and construing all reasonable inferences in Mr. Abdelaal's favor, as the court must at this stage, the court can reasonably infer that Mr. Abdelaal had at-will employment relationships with both WSP and Urban Engineers. *See Iqbal*, 556 U.S. at 678. And because at-will employment is a "species of contract," there is enough—at the motion-to-dismiss stage—to suggest that Mr. Abdelaal and WSP had a contractual relationship giving rise to a Section 1981 claim. *Covington*, 2023 WL 5133184, at *7 (quoting *Sheppard*, 59 F. Supp. 2d at 32).

## V. Conclusion

For the foregoing reasons, Urban Engineers' motion to dismiss Counts V and VI, ECF No. 17, is hereby **GRANTED**. WSP's motion to dismiss in part, ECF No. 15, is hereby **GRANTED** as unopposed as to Counts III, IV, and VIII, **GRANTED** as to Counts V and VI, and **DENIED** as to Counts I and VII.

Counts I, II, and VII remain before the court. Urban Engineers and WSP shall file answers to Mr. Abdelaal's complaint on or before **August 19, 2024**.

**SO ORDERED**.

/s/ Loren L. AliKhan
LOREN L. ALIKHAN
United States District Judge

Date: August 5, 2024